IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LISA ANN JESKEY MEADOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:13-CV-214 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Lisa Ann Jeskey Meador ("Meador") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Meador alleges that the Administrative Law Judge ("ALJ") erred by finding she did not meet or equal one of the mental disorder listings, determining she could perform her past relevant work given her residual functional capacity, and deciding that she could perform work that exists in substantial numbers in the national economy. I conclude that substantial evidence supports the ALJ's decision as a whole. Accordingly, I hereby **DENY** Meador's Motion for Summary Judgment (Dkt. No. 17), and **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. No. 19.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Meador failed to demonstrate that she was disabled

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636 (c)(1).

1

under the Act.[2]  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Meador protectively filed for SSI and DIB on June 23, 2009, claiming that her disability began on October 1, 2004 (R. 86, 97, 174-79) and later amended the onset date to July 8, 2009. R. 81.  The Commissioner denied the application at the initial and reconsideration levels of administrative review.  R. 84-125.  On October 12, 2011, ALJ Geraldine H. Page held a hearing to consider Meador's disability claim.  R. 37-83.  Meador was represented at the hearing, which included testimony from Meador, her mother Marjorie Ann Jeskey, and vocational expert John F. Newman.  R. 37-83.

On October 28, 2011, the ALJ entered her decision analyzing Meador's claim under the familiar five-step process[3] and denying Meador's claim for benefits.  R. 18-36.  The ALJ found

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work.  Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process.  20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age,

that Meador suffered from the severe impairments of degenerative joint disease of the sacroiliac region, arthralgia of the right shoulder, depression, and anxiety. R. 23. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 23-25. The ALJ concluded that Meador retained the RFC to perform medium work,[4] but was limited to 1) lifting or carrying 50 pounds occasionally and 25 pounds frequently; 2) standing, walking, or sitting for six hours in an eight-hour period; 3) occasionally climbing ramps and stairs, balancing, kneeling, stooping, crouching, and crawling; 4) avoiding repetitive overhead reaching with her right upper extremity; 5) avoiding concentrated exposure to extreme temperatures and excess humidity, pollutants, and irritants; 6) avoiding concentrated exposures to hazardous machinery, working at unprotected heights or on vibrating surfaces, and climbing ladders, ropes, and scaffolds; and 7) engaging in simple, routine, and repetitive unskilled tasks with only occasional interaction with the public. R. 25. The ALJ determined that Meador could return to her past relevant work as a data entry worker (R. 30), and that she also could work at jobs that exist in significant numbers in the national economy, such as a food preparation worker, stock clerk, and packer. R. 30-31. Thus, the ALJ held that Meador was not disabled. R. 32.

Meador appealed the ALJ's decision, and submitted medical documentation and a legal brief to the Appeals Council. R. 8-16. On February 27, 2013, the Appeals Council denied Meador's request for review (R. 1–7), and this appeal followed on May 3, 2013. Dkt. No. 3.

---

education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4]An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by her and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

3

# ANALYSIS

Meador alleges that the ALJ erred by (1) finding she did not meet or medically equal one of the listings, (2) determining she could perform her past relevant work given her RFC, and (3) deciding that she could perform work that exists in substantial numbers in the national economy. Having reviewed the record as a whole, I find that the ALJ's decision is supported by substantial evidence in the record.

## Mental Disorder Listings 12.04 and 12.06

A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Meador argues that the ALJ incorrectly concluded that her conditions did not meet or equal the requirements of either Listing § 12.04 (affective disorders) or § 12.06 (anxiety related disorders), and is not supported by substantial evidence. Dkt. No. 18, p. 9-13. I cannot agree.

To meet or equal a § 12.00 listing for a mental disorder, a claimant must satisfy criteria under both paragraph "A" and "B" of the particular listing. Paragraph A delineates the required medical diagnostic or clinical evidence of a mental impairment. Paragraph B criteria for each § 12.00 listing requires a showing of at least two functional limitations, such as (1) marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, or, (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P., App'x 1, §§ 12.04B, 12.06B, 12.08B & 12.10B. The Commissioner defines degrees of limitations under 20 C.F.R. §§ 404.1520a, 416.920a, rating limitations on a five point scale of "none, mild, moderate, marked, and extreme." A "marked" limitation as required for Paragraph B "may arise

when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P., App'x 1, §12.00C. If the criteria under Paragraph B cannot be met, then a claimant instead can satisfy Paragraph C's criteria for Listings §§ 12.04 and 12.06. Under Listing § 12.04(C), a claimant may meet the regulatory criteria if she has at least a two-year medically documented history of a chronic affective disorder with: 1) repeated episodes of decompensation, each of extended duration; 2) a residual disease process that has resulted in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause the claimant to decompensate; or 3) a current history of one or more years' inability to function outside a highly supportive living arrangement. 20 C.F.R. pt. 404, Subpt. P, Appx. 1, § 12.04(C). For Listing § 12.06(C), a claimant must demonstrate a "complete inability to function independently outside the area of one's home." Id. § 12.06(C).

The ALJ must clearly articulate the reasons for her decision regarding a listed impairment. Kiernan v. Astrue, 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013). "[A] conclusory statement that a condition does not constitute the medical equivalent of a listed impairment is insufficient." Id. (quoting Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009)). However, the fact "[t]hat the ALJ did not spell out every fathomable consideration is not reversible error." Smith v. Astrue, 2:11-CV-32, 2012 WL 1435661, at *6 (N.D.W. Va. Apr. 24, 2012) (citing Bledsoe v. Barnhart, 165 Fed. Appx. 408, 411 (6th Cir. 2006)). A cursory explanation in step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion. See Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011)

5

(accepting a cursory explanation under these circumstances). Ultimately, the role of this court is to examine the record to determine if substantial evidence supports the ALJ's conclusion.

While it would have been helpful for the ALJ to individually discuss all parts of the record relevant to whether Meador suffers a marked degree of limitation, the lack of such detail does not undermine the ALJ's ultimate conclusion. Smith v. Astrue, 2:11-CV-32, 2012 WL 1435661, at *6 (N.D.W. Va. Apr. 24, 2012 (citing Bledsoe, 165 Fed. App'x. at 411). "Where the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion in his Step 3 analysis." Kiernan, 2013 WL 2323125, at *6 (E.D. Va. May 28, 2013) (citing Smith, 457 Fed. App'x at 328). What is required is that the ALJ's decision has a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible. Id. (citing Diaz, 577 F.3d at 504). Thus, "remand is not warranted . . . 'where it is clear from the record which [L]isting . . . was considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the [s]tep [t]hree analysis which allows [the reviewing court] readily to determine whether there was substantial evidence to support the ALJ's [s]tep [t]hree conclusion.'" Dunford v. Astrue, BPG-10-0124, 2012 WL 380057, at*3 (D. Md. Feb. 3, 2012) (quoting Schoofield v. Barnhart, 220 F.Supp.2d 512, 522 (D. Md. 2002)).

Here, the ALJ's analysis was sufficiently detailed in step three to allow for meaningful judicial review; a review of the decision as a whole indicates that the ALJ's step three conclusion is supported by substantial evidence, and that the ALJ's step three analysis does in fact support

6

her conclusion that Meador does not meet or medically equal a listing.[5] The ALJ explained why Meador's mental restrictions failed to meet paragraphs B and C for both §§ 12.04 and 12.06. R. 23-25.[6] The ALJ completed an independent review of the entire record, and she discussed Meador's medical history and medical opinions in detail in step four of her analysis. R. 25-30. Moreover, Meador's statements in disability reports and at the hearing, along with the medical evidence considered by the ALJ and described throughout her opinion, support a finding of only mild to moderate limitations in activities of daily living, social functioning, and in concentration, persistence, and pace.

With regard to activities of daily living, the ALJ considered reports completed by Meador about her activities, noting that Meador reported challenges caring for herself and that her parents do most of the physical care of her children. R. 24. The ALJ's opinion demonstrates that she considered the applicable portions of the record which relate to Meador's difficulties of daily living. See Smith, 457 Fed. App'x at 328 (finding that the ALJ adequately considered the relevant portions of the record at step three based on review of the ALJ's decision as a whole). Furthermore, the ALJ's conclusion that Meador does not have marked difficulties in daily living is supported by substantial evidence. As the ALJ notes, Meador impressively cares for her five children. R. 24, 214. The record also shows that Meador is capable of driving, shopping for groceries, preparing simple meals, readying her children for school and picking them up, and caring for her dog. R. 213-16. Meador even reported in November 2009 that she was staying busy. R. 381. Additionally, Julie Jennings, Ph.D., a state agency psychologist, found only mild

---

[5] Because I find that substantial evidence supports the ALJ's decision that Meador does not meet the paragraph "B" criteria for the § 12.00 listings, I do not analyze separately whether Meador met any other criteria for the particular listings.

[6] Meador also challenges the ALJ's decision to not discuss the paragraph "A" criteria for §§ 12.04 and 12.06. Dkt. No. 18, p. 10. However, the ALJ needed to find, or at least assume, that Meador could meet the "A" criteria in order to advance her analysis under the "B" and "C" criteria. Thus, Meador's argument that the ALJ did not review the paragraph "A" criteria is without merit because the ALJ clearly found in her favor for said criteria.

7

restrictions in activities of daily living. R. 369. Treatment records from Mary Kiser, PA-C support Dr. Jennings' findings, as Ms. Kiser repeatedly marked Meador's ability to sleep, eat, tolerate stress, groom, and cooperate as "good." R. 379-99, 409-10. In light of these opinions and the other evidence of record, I find that substantial evidence supports the ALJ's conclusion that Meador suffered only mild restrictions in the activities of daily living, and thus, do not meet the paragraph B criteria.

Upon review of Meador's social functioning in step three, the ALJ pointed to Meador's difficulty being around others and her propensity to experience panic attacks. R. 24. The ALJ noted that "this has been accounted for when determining the residual functional capacity determined herein." R. 24. In her step four analysis, the ALJ elaborated on Meador's social life and how Meador only demonstrated moderate difficulties in that area. R. 29. Meador attends school functions, goes to the park, and spends time with her children. R. 29, 217. The ALJ further observed Meador's conservative medical care, which was limited to antidepressants and did not include any hospitalizations. R. 27. Although Meador reported that "I go out as little as possible, I have no social life" (R. 217), she frequently goes to the grocery store, watches the television with her children on a daily basis, and takes pride in a very close relationship with her children. R. 216-217. Meador also talks to her friends on the phone, though only every few months. R. 217. Additionally, Dr. Jennings found that Meador had only mild difficulty maintaining social functioning. R. 369. Based on this record, there is substantial evidence to support the ALJ's conclusion that Meador suffered from moderate, but not marked, difficulties in social functioning.

With regard to concentration, persistence, and pace, the ALJ discussed Meador's decreased memory skills. R. 24. Again, the ALJ notes that "this has also been accounted for

8

when determining the residual functional capacity determined herein." R. 24. The ALJ's discussion at step three is supported by her discussion of this evidence at step four. The ALJ noted in step four that Meador complained of memory problems to John Heil, D.A. in early 2010 and to Ms. Kiser in early 2011. R. 28. Meador reports that her lack of memory makes it a challenge to handle money, limits her organizational abilities, and makes her prone to forget spoken instructions unless she immediately completes them. R. 216-18. However, Meador reports that she usually can follow written instructions if she is not interrupted while reading them. R. 218. The medical opinions of the examining and non-examining psychological experts all indicate that she is capable of completing simple, routine tasks and maintaining concentration. See, e.g., R. 379-99, 409-10 (noting in Ms. Kiser's records that Meador's ability to concentrate generally was intact). Dr. Jennings noted that Meador only had mild difficulties in maintaining concentration, persistence, or pace. R. 369. Substantial evidence therefore supports the conclusion that Meador has the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(3) (describing concentration, persistence, and pace). Thus, Meador does not meet any of the paragraph B criteria.

Meador briefly mentions that a claimant can meet a listing under §§ 12.04 or 12.06 by demonstrating the criteria for paragraph "C." Dkt. No. 18, p. 10. However, Meador advances no argument to suggest that she has met the criteria for paragraph "C." Based on a review of the record, substantial evidence supports the ALJ's conclusion that Meador cannot meet paragraph "C" under either listing. Meador did not experience repeated episodes of decompensation as defined by the listing,[7] provided no evidence that she may decompensate due to environmental

---

[7] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning." 20 C.F.R. Pt. 404, Subpt. P, App.1,. § 12.00(B)(4). "Repeated

9

changes, and did not offer a history of her inability to function outside of a highly supportive living arrangement. Consequently, Meador does not meet the criteria for listing § 12.04(C). See R. 369 (noting no episodes of decompensation by Dr. Jennings). Similarly, substantial evidence supports that Meador did not experience a "complete inability to function independently outside the area of one's home," as required by § 12.06. Meador thus does not meet the criteria for listing § 12.06(C).

Therefore, the ALJ's opinion at step three that Meador does not meet or medically equal a mental disorder at § 12.00 is supported by substantial evidence. A reasonable mind might accept the above evidence as adequate to support the conclusions that Meador's activities of daily living, social functioning, and concentration, persistence, and pace are not impaired to a degree that "interfere[s] seriously with [her] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C) (defining a marked limitation). Furthermore, when considering the opinion as a whole, the ALJ's discussion of the evidence is sufficiently detailed to satisfy the court that she considered the entirety of evidence of record and to enable meaningful judicial review. Finally, despite Meador's claim to the contrary, the ALJ's analysis of the record evidence supports the conclusion she ultimately reached—that Meador does not meet or medically equal a mental disorder listing.

### Residual Functional Capacity Assessment

Next, Meador argues that the ALJ erred in finding that she could perform her past relevant work under her RFC. Dkt. No. 18, p. 14. Specifically, Meador argues that the ALJ did

---

episodes of decompensation, each of extended duration" is defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." The listing also notes that if a claimant has more frequent episodes of shorter duration or less frequent episodes of longer duration, the ALJ "must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." Id.

not take into account her mental health impairments and points to the opinions of Dr. Heil and Ms. Kiser as evidence of her limitations. Id. Meador also notes that the ALJ failed to consider the combined effect of her mental health and physical impairments. Id. Contrary to Meador's argument, the ALJ considered Meador's mental health impairments, the opinions of Dr. Heil and Ms. Kiser, and the combined impact of her mental health and physical impairments. Substantial evidence exists in the record to support the ALJ's conclusion that Meador's impairments permit her to perform medium work.

The administrative record shows conservative treatment and generally mild to moderate symptoms of post-traumatic stress, anxiety, and depression. Meador's medical records do not support her assertion that her mental health prevents her from working. In psychiatric progress notes dated from 1999 through early 2007, Drew C. Bockner, M.D. did not note any remarkable findings. R. 299-337. Dr. Bockner's minimal notes show that Meador cried easily (R. 307) and faced challenges with her significant other (R. 308), but that she still worked long hours of eleven to twelve hours each day. R. 316. Similarly, Dr. Jennings found that Meador suffered from non-severe depression and anxiety based on her review of the record. R. 359, 362, 364. Dr. Jennings determined Meador responded well to medication, her mood and memory were normal, her GAF score of 75 demonstrated good energy, compliance, and stress tolerance, and her memory and intelligence were within normal range. R. 371. Importantly, Dr. Jennings noted that Meador's condition should continue to improve with proper treatment. R. 371. The medical records and state agency opinion do not support Meador's allegations.

The opinions of Dr. Heil and Ms. Kiser similarly do not support Meador's inability to work. Dr. Heil first evaluated Meador in May and June 2010, when he diagnosed her with post-traumatic stress disorder, depression, and pain disorder. R. 402. Dr. Heil's evaluation did not

11

provide great detail; he noted that Meador's "poor memory is apparent with difficulty with sequential recounting of events," that she experiences depression with "generalized malaise," and that she exhibits relevant and coherent thought content. R. 403-04. Much of Dr. Heil's report appears based on Meador's self-reporting, such as her diminished memory and ability to concentrate. R. 403. On December 7, 2011, Dr. Heil again evaluated Meador and reported his findings after the ALJ's decision.[8] R. 11-14. The majority of his report remained based on Meador's self-reporting, discussing her chronic pain, her history of psychiatric problems, and past childhood and domestic abuse. R. 11-12. Dr. Heil did conduct psychological testing–such as the Beck Depression Inventory, the Burns Anxiety Inventory, and Mood Disorders Questionnaire–which he said were consistent with clinical depression, clinical anxiety disorder, and bipolar disorder. R. 13. However, the impact of these diagnoses on Meador's ability to function is unclear from Dr. Heil's report. In his recommended plan, Dr. Heil set up a treatment plan, but did not mention Meador's employability. R. 13. Although Dr. Heil's evaluation suggests that Meador suffers from mental health impairments, his limited discourse does not explain why he rated her with such a low GAF rating of 40 or why she cannot engage in the workforce. R. 11. Moreover, the ALJ clearly reviewed Dr. Heil's evaluation closely and expressed her concern about the support for his determination. R. 28.

  Ms. Kiser has greater experience with Meador than Dr. Heil because she regularly treated her. In Ms. Kiser's progress notes, which date from March 2007 through April 2011, Ms. Kiser noted that Meador was stressed due to financial problems (R. 379), documented her request for obtaining disability primarily due to her back and secondarily for anxiety (R. 380), and repeatedly marked Meador's ability to sleep, eat, tolerate stress, groom, and cooperate as "good."

---

[8] Although the Appeals Council stated it did not accept Dr. Heil's report because it was created after the ALJ's decision (R. 2), his report appears to have been accepted as it is part of the administrative record. R. 11-14.

R. 379-99, 409-10. In a July 2010 evaluation, Ms. Kiser checked that Meador had "marked" impairment for every question on the questionnaire, which included Meador's ability to sustain concentration and attention, her reliability and social interaction, and her understanding and memory. R. 406-07. In support of her clinical findings, Ms. Kiser referenced Dr. Heil's psychological evaluation and none of her records. R. 407. After the ALJ's decision, Ms. Kiser wrote an evaluative letter on November 29, 2011 that detailed her treatment of Meador.[9] R. 16. Ms. Kiser discussed Meador's post-traumatic stress disorder, chronic pain, sleep problems, and concentration issues. R. 16. Ms. Kiser also noted that Meador's chronic back pain affects her activities of daily living and that she is not being treated due to "insurance issues." R. 16.

The ALJ properly reviewed Ms. Kiser's determinations. Not only is Ms. Kiser's evaluation of Meador's "marked" impairments unsupported by her own records, but her position as a physician's assistant only qualifies her as an "other source" who can supplement the Commissioner's review of acceptable medical evidence as a non-acceptable medical source. 42 U.S.C. § 404.1513; see also Lotts v. Colvin, No. 5:13CV00071, 2014 WL 3809875, at *2 (W.D. Va. Aug. 1, 2014) ("A physician's assistant is considered a 'non-acceptable medical source' under the regulations, but the ALJ has a duty to consider all of the available evidence, including evidence provided from 'other' nonmedical sources such as physician's assistants.") (internal citations omitted). Although an ALJ must review opinions from other medical sources, they are not required to carry the same weight as a treating physician's assessment.[10] 42 U.S.C.

---

[9] Again, despite the Appeals Council's rejection of Ms. Kiser's report (R. 2), it appears as part of the administrative record. R. 16. However, Ms. Kiser's reference "description chart of the GAF scores" is not a part of the record.

[10] Meador's counsel noted at the hearing that the ALJ failed to assign "great" weight to any of the psychological opinions. Dkt. No. 28. The ALJ did assign only little weight to Ms. Kiser and both state agency psychologists. R. 29-30. As noted previously, the ALJ discounted Ms. Kiser's opinion because her opinion was stronger than the record evidence, specifically relating to Meador's GAF scores (R. 29); by contrast, the ALJ did not heavily rely upon the state psychologists' opinions because "additional evidence received after these assessments

§ 404.1513. The ALJ properly reviewed and discounted Ms. Kiser's evaluation of "marked" impairment based on her own records.

Substantial evidence also supports that the combination of Meador's physical and mental impairments did not merit a finding of disability. The ALJ thoroughly reviewed Meador's medical records and found that she had experienced conservative treatment for both her mental and physical impairments. R. 25-30. The administrative record shows little documentation to support a finding of physical disability for the relevant time period beginning in July 2009.[11] The only records post-dating July 2009 are a consultative examination and a state agency review. William Humphries, M.D. performed a consultative exam for Meador's low back in October 2009; he found that Meador's "[r]ange of motion is mildly reduced without significant kyphosis" in her back and that she experienced some tenderness. R. 353-55. Dr. Humphries diagnosed Meador with a cervical thoracic lumbar strain, degenerative joint disease in the sacroiliac region, right shoulder strain, and right knee pain. R. 356. He recommended limiting Meador to medium work, with standing and walking limited to six hours in an eight-hour workday, only occasional climbing, kneeling, and crawling, and a ban on repetitive overhead work with her right upper extremity. R. 356.

---

shows that the claimant is slightly more limited than they opined." R. 30. The ALJ is not required to attribute great weight to an opinion. See generally 42 U.S.C. § 416.927. Here, the ALJ assigned a weight to the psychological opinions and explained the reasons for her choices. The ALJ ultimately split the difference between the opinions when she found one opinion too strong and the other opinions too weak. As previously discussed in depth, the administrative record supports the ALJ's assessment of the psychological opinions and Meador's impairments.

[11] The records that pre-existed Meador's alleged onset date also did not support a finding of disability. In May 2005, Richard Cooper, M.D. determined Meador has an "abnormal left inferior sacrum at the sacral side of the sacroiliac joint." R. 283. A follow-up with Madge E. Ellis, M.D. in the same month following a CT scan found "no physical evidence for any surgical intervention." R. 291. During a July 2005 evaluation, Susanne Voekler, M.D. noted a sacral abnormality but found that Meador had a full range of motion and that her back was nontender. R. 346-47. In June 2009, Alfred A. Durham, M.D. wrote that Meador has a "partially sacralized L5 vertebrae" and reported low back pain. R. 339. Dr. Durham also noted that Meador "does not want to consider surgical options and does not appear to be in that much pain." R. 339.

State agency physician Michael Hartman, M.D. largely agreed with Dr. Humphries' findings. Dr. Hartman diagnosed Meador with cervical thoracic lumbar strain, degenerative joint disease in the sacroiliac region, right shoulder strain, and right knee pain. R. 373. He agreed with all of the same limitations, with the exception that Meador had no limitations for pushing or pulling. R. 374. Dr. Hartman also recommended medium work and found that Meador's allegations were only partially credible. R. 378. With such mild findings for both physical and mental impairments, the ALJ reasonably determined that their combined effect could not render Meador disabled.

The ALJ generally accepted the opinions of Meador's physical and mental impairments, but she found that these opinions and the medical record did not support a finding of a disability. This analysis reflects reasoned consideration of the medical opinions in relation to the entire record. The RFC properly accounted for all of Meador's physical and mental limitations established by the medical evidence. I find no error in this analysis and find that substantial evidence supports the ALJ's evaluation of the medical opinions of record.

## Vocational Expert

Meador also claims that Ms. Kiser's and Dr. Heil's opinions were not expressed to the vocational expert, and thus, the vocational expert's assessment of the jobs she could perform was inadequate. A review of the hearing transcript demonstrates that Meador's allegation is without merit.

At the administrative hearing, the ALJ presented a hypothetical to the vocational expert of an individual with Meador's age, education, and work experience, who was capable of medium work; could stand, walk, and sit for no more than six hours in an eight-hour day; and occasionally could climb, use ramps and stairs, balance, kneel, crawl, stoop, and crouch. The

individual could not repeatedly reach overhead with her right upper extremity; could face no more than concentrated exposure to hazardous machinery at unprotected heights, work on vibrating surfaces, or climb ladders, ropes, and scaffolds; and also could not face more than concentrated exposure to extreme temperatures, excess humidity, pollutants, and irritants. The individual could only perform simple, unskilled, and repetitive tasks, involving occasional interactions with the general public. R. 77-78. Based on that hypothetical, the vocational expert found that jobs existed in the national and regional economy for such an individual. R. 78-79. The ALJ followed up with a hypothetical based on the assumption that the testimony of Meador and her mother was fully supported and that Meador would be "off-task 30 to 40 percent of any workday;" the vocational expert found that Meador would not be able to find employment under that hypothetical. R. 79.

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). Here, Meador contends that the ALJ did not ask the vocational expert about how limitations from Dr. Heil's and Ms. Kiser's opinions would affect her employability. Dkt. No. 18, p. 16. Meador notes that Dr. Heil and Ms. Kiser "consistently discussed the same types of pain and mental health conditions over and over again throughout the record." Id. The vocational expert was present throughout the administrative hearing in this matter, and heard Meador's testimony. Specifically, Meador testified about her treatment with Dr. Heil and Ms. Kiser, as well as her struggles with post-traumatic stress, anxiety, and depression. R. 54-56. The vocational expert referenced that he possessed Meador's file before him, which included the opinions and treatment records from Dr. Heil and Ms. Kiser. R. 80. Counsel for Meador even pointed out Ms.

16

Kiser's clinical opinion to the vocational expert during his examination. R. 80-81 (referring the vocational expert to review Exhibits 10F and 12F). Thus, the vocational expert was sufficiently aware of Meador's mental health limitations when he responded to the ALJ's hypothetical question that was not based on all of Meador's statements, and it was reasonable for the ALJ to rely upon the vocational expert's testimony.

Meador also argues that the ALJ stated she would have made a finding of disability if she had accepted Meador's contentions.[12] Dkt. No. 18, p. 16. Meador does not cite where in the transcript the ALJ made such a statement and the court has not found one. The vocational expert stated that Meador would not be employable if her testimony were fully supported and she was "off-task 30 to 40 percent of any workday;" however, the ALJ was not required to accept the vocational expert's opinion for a hypothetical based on Meador's statements and unsupported medical documentation. See R. 79. An ALJ does not have to accept a vocational expert's testimony that a claimant cannot hold a job based on her statements of her functional capacity if the ALJ questions the claimant's credibility. See Mickles v. Shalala, 29 F.3d 918, 928 n.7 (4th Cir. 1994) ("Although the expert testified when examined by Mickles' attorney that Mickles could not hold a job if her functional capacity were restricted by pain to the extent she alleged, the ALJ found those allegations to be incredible. As that finding was supported by substantial evidence, so too was his finding that Mickles was capable of performing sedentary work and therefore not disabled under 20 C.F.R. § 416.920(f)(1).") (internal citations omitted). The ALJ concluded that Meador was only partially credible because her testimony and other statements conflicted with the objective medical evidence and her activities. R. 26, 28. Substantial evidence also supports the ALJ's decision to rely more heavily on the record, and to not accept the vocational expert's answer to the

---

[12] Meador's argument regarding the ALJ's contention is unclear because she references a different named plaintiff, a different doctor, and different medical records in her brief. The Court construes this argument to mean that the ALJ would have found her disabled if she was found credible and the evidence supported her statements.

17

hypothetical that was based on Meador's testimony. Thus, I conclude that the hypothetical given to the vocational expert adequately accounted for all impairments reflected in the record.

## CONCLUSION

In this civil action, the court's role is limited to determining whether the ALJ erred by finding that Meador did not meet or medically equal one of the listings, determining she could perform her past relevant work given her RFC, and deciding that she could perform work that exists in substantial numbers in the national economy. In this case, substantial evidence supports the ALJ's opinion. I do not suggest that Meador is totally free from pain and distress. The objective medical record simply fails to document during the relevant period the existence of conditions that would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Meador's claim for benefits and in determining that her physical and mental impairments would not prevent her from performing any work. Substantial evidence supports the ALJ's decision on all grounds. For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be denied; Defendant's Motion for Summary Judgment will be granted, and this action will be dismissed and stricken from the active docket of the Court.

Enter: March 27, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge